UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CURVES INTERNATIONAL, INC.

                      Plaintiff,

        -against-                                          5:11-CV-0425 (LEK/TWD)

VERONICA SCRIVENER NASH AND
NV FITNESS,

                      Defendant.

_____

## MEMORANDUM-DECISION and ORDER

### I.      INTRODUCTION

The present action arises from a dispute between Plaintiff Curves International, Inc.

("Plaintiff"), and Defendants NV Fitness and Veronica Scrivener Nash ("Defendants").  See

Dkt. No. 1 ("Complaint").  Following the termination of a franchise agreement, Plaintiff brought

claims against Defendants for breach of contract, violations of the Lanham Act, and

misappropriation of trade secrets.  See generally id.  The record indicates that Defendants were

properly served with copies of the summons and Complaint.  See Dkt. Nos. 5; 6.  By Court Order of

March 9, 2012, Plaintiff's Motion for default judgment was granted in part, and it was further

ordered that the Court would consider an award of damages and/or attorneys' fees if Plaintiff

submitted affidavits and documentation in support of such an award within 30 days of the filing of

the Order.  Dkt. No. 16 ("March Order") at 6-7.  It was further ordered that if Plaintiff submitted

such evidence, Defendants were to have 30 days to file a response.  Id.  The Court has received

Plaintiff's Supplemental Declaration in support of request for attorneys' fees and costs, which was

timely filed on April 9, 2012, in accordance with the March Order, and the same was served upon

Defendants.  Dkt. Nos. 18; 19.  The Court has also received Plaintiff's Exhibits A and B, which

contain documentary evidence in support of Plaintiff's request, and were served upon Defendants.

See Dkt. Nos. 18-1; 18-2.  Having received no response from Defendants, the determination of

whether an award of attorneys' fees and costs is warranted in the instant action is presently before

the Court.  For the following reasons, the Court finds that such an award is appropriate in this case,

and orders that Defendants pay Plaintiff's fees and costs in accordance with this Memorandum-

Decision and Order.

## II.    BACKGROUND[1]

Plaintiff is a franchisor of CURVES® fitness centers across the United States featuring a

thirty-minute fitness program designed for women.  Compl. ¶ 10.  Plaintiff owns several federally

registered marks as well as the proprietary CURVES® fitness system.  Id. ¶ 11.  On June 1, 2000,

Defendant Nash entered into a ten-year franchise agreement with Plaintiff granting her the right to

operate a CURVES® franchise in the Ithica, New York area.  Id. ¶ 14; Dkt. No. 1-1 ("Franchise

Agreement") ¶ 2.  Defendant Nash received training from Plaintiff as well as other proprietary and

confidential materials and information.  Compl. ¶ 16.  Defendant Nash then owned and/or operated

a CURVES® fitness franchise located at 609 Clinton Street, Ithaca, New York.  Id. ¶ 3.

The Franchise Agreement specified that "the information received by Nash is confidential,

proprietary, and competitively sensitive" and "permitted Nash to offer only CURVES® brand fitness

and weight loss services and products, or other services or products if approved by Curves."  Id.

---

[1] Because "a defaulting defendant is deemed to have admitted all of the well-pleaded
allegations in the complaint pertaining to liability," Gen. Nutrition Inv. Co v. Gen. Vitamin Ctrs.
Inc., 817 F. Supp. 2d 66, 71 (E.D.N.Y. 2011) (citing Cotton v. Slone, 4 F.3d 176, 181 (2d Cir.
1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)),
the Court deems the factual allegations in the Complaint to be admitted by Defendant as true.

¶¶ 17-18.  In addition, the "Franchise Agreement establishes a procedure whereby Nash could

terminate the Franchise Agreement prior to the expiration of its term upon the mutual agreement of

Curves," and "that upon termination of the Franchise Agreement Nash was to immediately cease

using Curves' Marks; comply with all post-termination covenants; and return to Curves all printed

material furnished to her by Curves, including manuals, advertising materials, and the like."  Id. ¶¶

19-20.  Moreover, upon termination, "Nash further agreed to assign and deliver to Curves all check

drafts for all memberships to Curves, and any past or present membership lists or leads."  Id. ¶ 21.

The Franchise Agreement also contained a "post-termination covenant against competition," by

which Defendant Nash agreed not to participate in or otherwise derive benefit from a business

similar to that of Curves within 40 miles of the designated area.  Id. ¶¶ 23-24.  During the same

three-year period, Nash agreed not to

> a) employ, seek to employ, or induce away any person employed by Curves or any one
> of its franchises; (b) interfere with or attempt to interfere with any of the business
> relationships or advantages of Curves or any other Curves' franchisee; (c) use any
> confidential information from Curves' manuals or system in any similar business; (d)
> use the Curves' [sic] Marks, manuals, or system in any way to engage in, participate in,
> or derive any benefit from any similar business; (e) divert or attempt to divert any
> customer or business from Curves or any of its franchisees; and (f) solicit or endeavor
> to obtain the business of any person who shall have been a customer of any other
> Curves' franchisee.

Id. ¶ 25.

On August 13, 2009, Plaintiff and Defendant Nash entered into a termination of license

agreement and mutual release ("Termination Agreement"), the terms of which called for the

retention by Defendant Nash of certain post-termination obligations.  Id. ¶¶ 27-28.  Specifically,

Defendant Nash agreed to a covenant not to compete, and to assign and deliver to Plaintiff all check

drafts for all memberships to Curves, as well as any membership lists or leads, past or present.  Id.

¶ 28.

Prior to the termination of the Franchise Agreement, Defendant Nash inquired by e-mail

whether offering personal training services would constitute a breach of the terms of her agreements

with Plaintiff, to which Plaintiff replied that offering such services would be considered a breach of

the non-compete provisions of the Franchise and Termination Agreements.  Id. ¶¶ 29-30.

Nevertheless, Defendant Nash proceeded to provide personal training services through the operation

of Defendant NV Fitness, using CURVES® marks, mailing and membership lists, and other

proprietary materials to market and sell her own fitness services.  Id. ¶¶ 31, 34.  Plaintiff sent a

cease-and-desist letter to Defendants Nash and NV Fitness on or about December 17, 2010, to no

effect.  Id. ¶¶ 33-34.  Defendant Nash's improper use of CURVES® Marks persisted, and she was

still operating Defendant NV Fitness in competition with Curves upon the commencement of the

present action.  Id. ¶ 34.

Plaintiff filed a Complaint in the U.S. District Court for the Northern District of New York

on April 15, 2011.  See id.  Summonses were issued as to Defendants NV Fitness and Nash on April

18, 2011.  Dkt. Nos. 2; 2-1.  Plaintiff brought claims for breach of the Termination Agreement and

covenant not to compete, as well as federal trademark infringement.  See Compl. ¶¶ 35-55.  Plaintiff

also brought claims for false designation and misrepresentation of origin, as well as

misappropriation of trade secrets.  Id. ¶¶ 56-65.  Plaintiff prayed for injunctive relief pursuant to

Rule 65 of the Federal Rules of Civil Procedure, seeking either a temporary or permanent

injunction.  Id. ¶¶ 66-77.

Because Defendants never responded to the Complaint, Plaintiff filed a request for Clerk's

certificate of entry of default on May 18, 2011.  Dkt. No. 7.  The Clerk's entry of default was

subsequently filed on May 25, 2011.  Dkt. No. 8.  Plaintiffs filed a Motion for default judgment on

June 28, 2011, which was served upon Defendants on the following day.  Dkt. Nos. 9; 11.  The

Court granted Plaintiff's Motion for default judgment but held that it would not award damages or

attorneys' fees unless and until Plaintiff filed with the Court and served upon Defendants affidavits

and any other admissible evidence substantiating Plaintiff's request within 30 days of the date upon

which the Order was filed.  March Order at 5, 6-7.  A Supplemental Declaration in support of

request for attorneys' fees and costs as well as attached exhibits were filed on April 9, 2012, in

accordance with the Court's Order.  Dkt. Nos. 18; 18-1; 18-2.  The record reflects that the same was

served upon Defendants on that day.  Dkt. No. 19 at 1.  The Court has not received a response from

Defendants.

## III.    DISCUSSION

In New York, courts have upheld contractual attorneys' fees provisions.  See, e.g., Feitshans

v. Kahn, No. 06 Civ. 2125, 2006 WL 2714706, at *6 (S.D.N.Y. Sept. 21, 2006).  The general rule is

that "when a contract provides that in the event of litigation the losing party will pay the attorneys'

fees of the prevailing party, the court will order the losing party to pay whatever amounts have been

expended by the prevailing party, so long as those amounts are not unreasonable."  F.H. Krear &

Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987).  However, "[u]nder New

York law, 'the court should not infer a party's intention' to provide counsel fees as damages for a

breach of contract 'unless the intention to do so is unmistakably clear' from the language of the

contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003) (quoting Hooper

Assocs., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 903 (N.Y. 1989); Zissu v. Bear, Stearns &

Co., 805 F.2d 75, 79 (2d Cir. 1986)).

Here, the Court finds that the parties clearly contracted for a fee-shifting provision and

Plaintiffs are thus entitled to attorneys' fees and costs for claims arising from the Franchise or

Termination Agreements.  The Franchise Agreement, signed by both parties on June 1, 2000,

expressly and unambiguously provides that "[i]n the event that any legal action is filed in relation to

this Agreement, the successful party in the action shall be entitled to recover its costs therein,

including reasonable attorneys' fees." Franchise Agreement ¶ 14M.[2]  Plaintiff's first, second, fifth,

sixth, and seventh causes of action relate to and/or directly concern the operation, enforcement,

construction, or interpretation of the Franchise and Termination Agreements, and any fees and costs

related to these causes of action shall be awarded to Plaintiff pursuant thereto.

The Lanham Act, upon which Plaintiffs' third and fourth causes of action are based, also

contains a fee-shifting provision.  More specifically, the Lanham Act provides that

> When a violation of any right of the registrant of a mark registered in the Patent and
> Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful
> violation under section 1125(c) of this title, shall have been established in any civil
> action arising under this chapter, the plaintiff shall be entitled, subject to the

---

[2] See also Franchise Agreement ¶ 5J ("[I]n the unlikely event that a dispute occurs or an action of law or equity arises between franchisor and franchisee concerning the operation, enforcement, construction or interpretation of this agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, court costs and expenses incurred by the other party in the action.").

provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . the costs of the action.

15 U.S.C. § 1117(a).  The Lanham Act also provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a); see Farberware Licensing Co., LLC v. Meyer Marketing Co., Ltd., 428 F. App'x 97, 99 (2d Cir. 2011).  "In the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement."  Gen. Nutrition Inv. Co., 817 F. Supp. 2d at 74 (citing Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999); Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849 (2d Cir. 1995)).

Courts have held that the unauthorized use of proprietary marks can give rise to an exceptional case in which an award of attorneys' fees and costs is appropriate, especially where defendants have failed to comply with cease-and-desist letters.  See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co., 665 F. Supp. 2d 434, 435-37 (S.D.N.Y. 2009) (defendant continued to use kosher certification mark without authorization despite cease and desist letter); Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 518-19, 527 (S.D.N.Y. 2009) (defendant failed to comply with two cease-and-desist letters based on continued unauthorized use of Viagra marks displayed on a twenty foot rocket and other de-commissioned military hardware to market an outdoor advertising business); Century 21 Real Estate LLC v. Team Mates Realty Corp., No. CV 07-4134, 2009 WL 910655, at *1-2, 7 (E.D.N.Y. Feb. 18, 2009) (persistent unauthorized

use of Century 21 marks by former brokerage franchisee after termination of franchise agreement in

the face of multiple cease-and-desist letters).

Moreover, courts have held that "[t]he standard for willfulness is 'whether the defendant had

knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the

possibility.'" Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288 (2d Cir. 1999) (quoting Twin Peaks

Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993) (alterations in original)).  In

addition, courts have viewed a defendant's default as evidence of willfulness.  Kenneth Jay Lane,

Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *7 (S.D.N.Y. 2006) ("[T]he

defendant's infringement has been deemed willful by virtue of its default in this action.").

Plaintiff alleges that the "[t]he acts of Nash and NV Fitness were and are being done

knowingly and intentionally to cause confusion, or to cause mistake, or to deceive."  Compl.

¶ 54.  Having inquired as to whether offering personal training services would constitute a breach of

the Franchise Agreement, and having been informed that indeed it would, Defendant Nash

proceeded to provide such services without regard for her contractual obligations.  Id.

¶¶ 29-31.  Moreover, Defendant Nash has since used CURVES® or similar marks in selling her own

services, and has used Curves propriety mailing and membership lists to attract business using

advertisements which contained CURVES® marks.  Id. ¶ 31.  Defendant Nash has ignored demands

to comply with the terms of the Franchise Agreement, including a cease-and-desist letter sent on or

about December 17, 2010.  Id. ¶¶ 33-34.  The Court, considering all of the above, finds that this is a

case of willful infringement.  Plaintiff is therefore entitled to attorneys' fees and costs with regard to

Plaintiff's Lanham Act claims.

Having determined that an award of attorneys' fees and costs is appropriate in this case, the

next issue is how to determine the proper amount of the award.  In the Second Circuit, "[t]he

process of determining a reasonable fee ordinarily begins with the court's calculation of a so-called

'lodestar' figure," by which "[a]ttorney's fees are awarded by determining a presumptively

reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably

expended hours."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763-64 (2d Cir. 1998); Lewis v.

City of Albany Police Dep't, 554 F. Supp. 2d 297, 298 (N.D.N.Y. 2008) (citing Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir.

2008)).  This figure "is not always conclusive, but must, 'absent extraordinary circumstances,' be

the starting point for a fee calculation."  Zalewski v. T.P. Builders, Inc., No. 10-CV-876, 2012 WL

5880327, at *3 (N.D.N.Y. Nov. 21, 2012) (quoting Millea v. Metro-North R.R., 658 F.3d 154, 166-

69 (2d Cir. 2011)).

The Court notes that Plaintiff retained out-of-district counsel in this matter, who have

requested higher rates than those just discussed.  While courts have previously held that "[t]he

prevailing hourly rates in this district, which are what a reasonable, paying client would be willing

to pay, are $210 per hour for an experienced attorney, $150 per hour for an attorney with more than

four years experience, $120 per hour for an attorney with less than four years experience, and $80

per hour for paralegals,'" Lewis, 544 F. Supp. 2d at 298-99 (citing Picinich v. United Parcel Serv.,

No. 01-CV-01868, 2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008)), courts have recently found

higher rates to be appropriate.  See Zalewski, 2012 WL 5880327, at *3 (concluding that the

following rates are reasonable in the Northern District of New York: $275 per hour for partners;

$200 per hour for an attorney with more than four years experience; $170 per hour for an attorney

with less than four years experience; and $90 per hour for paralegals); Bosket v. NCO Financial

Systems, Inc., No. 11-CV-00678, 2012 WL 4093023, at *3 (N.D.N.Y. Sept. 17, 2012) (Kahn, J.)

(awarding attorneys' fees at a rate of $335 per hour for partners); Trudeau v. Bockstein, No.

05-CV-1019, 2008 WL 3413903, at *5 (N.D.N.Y. April 7, 2009) (finding rates of out-of-district

firm reasonable where hourly billing ranged from $110 for a project assistant to $585 for a partner).

In the Second Circuit, "when faced with a request for an award of higher out-of-district rates,

a district court must first apply a presumption in favor of application of the forum rule," Simmons v.

N.Y.C. Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009), which states that "courts should typically

use the hourly rates employed in the district in which the reviewing court sits in calculating the

presumptively reasonable fee." Stair v. Calhoun, 722 F. Supp. 2d 258, 273 (E.D.N.Y. 2010) (citing

Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997)).  Plaintiff makes no argument as to

why the forum rule should not apply in this case.  Therefore, the Court finds that Plaintiff is

requesting fees at rates higher than the prevailing rates in this District and has not defeated the

presumption in favor of the forum rule.

> [T]o overcome that presumption, a litigant must persuasively establish that a reasonable
> client would have selected out-of-district counsel because doing so would likely (not
> just possibly) produce a substantially better net result. . . . The party seeking the award
> must make a particularized showing, not only that the selection of out-of-district counsel

10

was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

Simmons, 575 F3d at 175-76.

The Court finds that the rates recently set forth in Zalewski remain reasonable and calculates the lodestar accordingly. Thus, based on the documentation provided by Plaintiff and the rates set forth in Zalewski, the lodestar in this case is calculated as follows:[3]

| Garfunkel Wild, P.C.: FEES | | | | |
|---|---|---|---|---|
| **Name** | **Description** | **Rate** | **Hours** | **Fees** |
| Philip C. Chronakis | Attorney | $200.00 | 0.8 | $160.00 |
| Peter G. Siachos | Attorney | $200.00 | 9.5 | $1,900.00 |
| Erin Henderson | Attorney | $200.00 | 7.5 | $1,500.00 |
| Matthew Gallo | Clerk | $90.00 | 0.5 | $45.00 |
|  | | TOTAL | 18.3 | $3,605.00 |

| Garfunkel Wild, P.C.: COSTS | | |
|---|---|---|
| **Item** | **Date** | **Cost** |
| Fedex-standard overnight to NV fitness, Freeville, NY on 12/17/10 | 12/24/10 | $13.77 |
| Fedex-standard overnight to Veronica Nash on 12/17/10 | 12/24/10 | $13.77 |
| Fedex-standard overnight to NV fitness, Ithaca, NY on 12/17/10 | 12/24/10 | $12.45 |
| Spartan Detecitve Agency, Inc. - asset research re: Veronica J. Nash (A/K/A/ Veronica J. Scrivener, v. Miller) on 1/13/11 | 01/13/11 | $80.25 |
|  | TOTAL | $120.24 |

---

[3] See Dkt. Nos. 18-1, 18-2.

| Chronakis Siachos, LLC: FEES[4] | | | | |
|---|---|---|---|---|
| **Name** | **Description** | **Rate** | **Hours** | **Fees** |
| Peter G. Siachos | Partner | $275.00 | 8.5 | $2,337.50 |
| Caroline P. Wallit | Partner | $275.00 | 1.5 | $412.50 |
| Erin Henderson | Attorney | $200.00 | 3.6 | $720.00 |
| Max Dilendorf | Summer Associate | $170.00 | 1.7 | $289.00 |
| Jeffrey Valacer | Clerk | $90.00 | 0.3 | $27.00 |
| | | TOTAL | 15.6 | $3,786.00 |

| Chronakis Siachos, LLC: COSTS | | |
|---|---|---|
| **Item** | **Date** | **Costs** |
| Filed federal complaint | 4/15/11 | $350.00 |
| Guaranteed Subpoena Services, Inc. - Service of complaint | 4/28/11 | $35.00 |
| Guaranteed Subpoena Services, Inc. - Service of complaint | 4/28/11 | $149.95 |
| Guaranteed Subpoena Services, Inc. - Service of complaint | 6/2/11 | $35.00 |
| Guaranteed Subpoena Services, Inc. - Service of complaint | 6/2/11 | $149.95 |
| | TOTAL | $719.90 |

---

[4] Plaintiff also states that "[t]he hourly rate of Elizibeth Elices, Esq., an associate attorney at Chronakis Siachos, LLC who worked on this matter, is $225, and this is also a reasonable hourly rate." Dkt. No. 18 ¶ 13. However, no documentation was submitted indicating the number of hours Ms. Elices worked on this case. The Court therefore can make no award of her fees. See Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 n.3 (S.D.N.Y. 2011) ("The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.") (citing N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983)).

Total for Garfunkel Wild, P.C.:           $3,725.24
Total for Chronakis Siachos, LLC:         $4,505.00
Total amount of legal fees and Costs:     $8,230.24

The Court perceives no reason for a departure from the lodestar and finds that a total award

of $8,230.24 in fees and costs is appropriate in this case.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's request for attorneys' fees and costs is **GRANTED**; and it is

further

**ORDERED**, that Plaintiff is awarded a total of $8,230.24 in accordance with this Decision;

and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all the parties.

**IT IS SO ORDERED**.


DATED:      July 25, 2013
            Albany, New York



Lawrence E. Kahn
U.S. District Judge